**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

| | |
|---|---|
| **TRACY KNUCKLES,** )<br>    Plaintiff,           )<br>                               )<br>v.                            )<br>                               )<br>                               )<br>**MICHAEL J. ASTRUE,**[1] )<br> **Commissioner of Social Security,** )<br>    Defendant.         ) | Civil Action No. 2:06cv00069<br>**REPORT AND<br>RECOMMENDATION**<br><br>By:   P<small>AMELA</small> M<small>EADE</small> S<small>ARGENT</small><br>U<small>NITED</small> S<small>TATES</small> M<small>AGISTRATE</small> J<small>UDGE</small> |

*I. Background and Standard of Review*

Plaintiff, Tracy Knuckles, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003 & Supp. 2007). This court has jurisdiction pursuant to 42 U.S.C. § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007, and is, therefore, substituted for Jo Anne B. Barnhart as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d)(1).

-1-

application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Knuckles protectively filed her current application for SSI[2] on January 5, 2005, alleging disability beginning September 2, 2002, due to depression, social anxiety, social phobia, stomach problems, irregular heartbeat, weak knees, fluid on her heart and asthma. (Record, ("R."), at 38-40, 71.) The claim was denied initially and on reconsideration. (R. at 32, 33-35.) Knuckles then requested a hearing before an Administrative Law Judge, ("ALJ"). (R. at 36.) The ALJ held a hearing on August 22, 2006, at which Knuckles was represented by counsel. (R. at 182-96.)

By decision dated October 6, 2006, the ALJ denied Knuckles's claim. (R. at 10-17.) The ALJ found that Knuckles had not engaged in any substantial gainful activity since September 2, 2002. (R. at 16.) The ALJ found that the medical evidence established that Knuckles had a severe impairment, namely asthma, but he found that Knuckles's impairment did not meet or medically equal the requirements of any

---

[2]Knuckles filed a prior application for SSI on September 12, 2002, alleging disability beginning January 1, 1999. (R. at 10.) The claim was denied initially on April 23, 2003, and not pursued further. (R. at 10.)

-2-

impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.) The ALJ also found that Knuckles retained the residual functional capacity to perform work at all exertional levels, which did not require her to work around dust and other respiratory irritants or expose her to temperature extremes and which could be performed within the mental limitations assessed by psychologist B. Wayne Lanthorn. (R. at 16.) The ALJ found that Knuckles's allegations regarding her limitations were not totally credible. (R. at 16.) Based on Knuckles's age, education, past work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed that Knuckles could perform, including jobs as a truck driver helper, a nonconstruction laborer, a hand packer, an assembler, a production helper and a production inspector. (R. at 16-17.) Therefore, the ALJ found that Knuckles was not under a disability as defined in the Act at any time through the date of his decision, and that she was not eligible for benefits. (R. at 17.) *See* 20 C.F.R. § 416.920(g) (2007).

After the ALJ issued his decision, Knuckles pursued her administrative appeals, (R. at 6), but the Appeals Council denied her request for review. (R. at 3-5.) Knuckles then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2007). The case is before this court on Knuckles's Motion for Summary Judgment filed June 1, 2007, and on the Commissioner's Motion for Summary Judgment filed July 5, 2007.

*II. Facts*

Knuckles was born in 1983, (R. at 185), which classifies her as a "younger person" under 20 C.F.R. § 416.963(c) (2007). Knuckles has a ninth-grade education

-3-

and past relevant work experience as a janitor and child care worker.[3] (R. at 45, 186.) Knuckles reported that she spoke to her friends on the telephone three times a week, visited one friend regularly, that her hobbies included playing basketball and baseball, she attended church, walked outside, rode her bicycle, did minor shopping, had relatives visit her and that she maintained a relationship with her latest boyfriend for a significant amount of time. (R. at 59, 124, 151-52.) She also reported that she read, watched television and worked on obtaining her general equivalency development, ("GED"), diploma. (R. at 55.) Knuckles testified that she had not had an asthma attack since taking her medication. (R. at 192.)

Robert Spangler, a vocational expert, also was present and testified at Knuckles's hearing. (R. at 193-95.) Spangler was asked to consider a hypothetical individual of Knuckles's height, weight, education and work capacity for all levels of exertion, who must avoid activities around dust and other respiratory irritants and exposure to temperature extreme and who was mentally limited as indicated by the assessment of psychologist Lanthorn. (R. at 121-26, 193.) Spangler stated that a significant number of jobs existed that such an individual could perform, including jobs as a truck driver helper, a nonconstruction laborer, a hand packer, an assembler, a production helper and an inspector. (R. at 194.)

In rendering his decision, the ALJ reviewed records from Lee County

---

[3]The ALJ found that Knuckles's past work was not of a level to constitute substantial gainful activity. (R. at 11.)

-4-

Behavioral Health Services;[4] Lee County Child and Adolescent Center;[5] Lee County Virginia Schools; Stone Mountain Health Services; J. Kaye Weitzman, L.C.S.W., a licensed clinical social worker; Dr. Kevin Blackwell, D.O.; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Jorge F. Fuchs, M.A., a psychological examiner; Eugenie Hamilton, Ph.D., a state agency psychologist; E. Hugh Tenison, Ph.D., a state agency psychologist; Dr. Richard M. Surrusco, M.D., a state agency physician; and Dr. Thomas Phillips, M.D., a state agency physician.

The record shows that Knuckles was seen at Stone Mountain Health Services from September 2003 through August 2006 for various complaints such as constipation, sinusitis, anxiety, depression, asthma and abdominal discomfort. (R. at 92-115, 151-81.) In March 2004, Knuckles reported that her symptoms of depression were controlled with medication. (R. at 108-09.) She also reported that her constipation was better since taking medication. (R. at 109.) Knuckles complained of shortness of breath without wheezing. (R. at 109.) An Albuterol treatment was given, which provided significant improvement. (R. at 108.) In July 2004, Knuckles reported that her breathing was much better since starting Bactrim, but that she still had shortness of breath with difficulty taking in air. (R. at 104.) Knuckles's lungs were clear with no wheezes or crackles. (R. at 104.) She was diagnosed with probable asthma, constipation and anxiety. (R. at 104.) In July 2005, Knuckles reported that she was doing well since taking her medications. (R. at 92.) She reported no acute exacerbations of asthma and no symptoms of depression. (R. at 92.) She was

---

[4] A note from Lee County Behavioral Health Services indicated that services had not been provided to Knuckles from March 2004 through July 2005. (R. at 85.)

[5] A note from Lee County Child and Adolescent Center indicated that services had not been provided to Knuckles since February 9, 2001. (R. at 86.)

-5-

diagnosed with generalized anxiety, stable, mild asthma, stable, and constipation, stable. (R. at 92.) In September 2005, Knuckles complained of sinus and chest congestion. (R. at 172.) She was diagnosed with an upper respiratory infection, bronchitis, mild sinusitis, depression and asthma. (R. at 172.)

Knuckles was seen by J. Kaye Weitzman, L.C.S.W., a licensed clinical social worker at Stone Mountain Health Services, for mental health treatment from September 14, 2005, to February 1, 2006. (R. at 151-56.) Weitzman diagnosed major depressive disorder, recurrent, moderate and social phobia. (R. at 151-81.) In October 2005, Knuckles reported improved sleep and better mood. (R. at 153.) In December 2005, Knuckles reported that she was feeling good. (R. at 152.) Weitzman noted that Knuckles had a bright mood with an anxious affect and no suicidal or homicidal ideations. (R. at 152.) In February 2006, Weitzman noted that Knuckles had a bright mood with an anxious affect. (R. at 151.) Knuckles reported that she was doing "okay." (R. at 151.)

In August 2006, Weitzman completed a mental assessment indicating that Knuckles had a satisfactory ability to understand and remember simple instructions. (R. at 180-81.) She indicated that Knuckles had a satisfactory to severely limited, but not precluded, ability to carry out short, simple instructions and to make judgment. (R. at 180.) Weitzman indicated that Knuckles had a severely limited, but not precluded, ability to carry out detailed instructions and to interact appropriately with supervisors and with co-workers. (R. at 180-81.) She indicated that Knuckles had a severely limited, but not precluded, to no useful ability to interact appropriately with the public and to respond appropriately to changes in a routine work setting. (R. at 180.) She also found that Knuckles had no useful ability to understand and remember

-6-

detailed instructions and to respond appropriately to work pressures. (R. at 180-81.)

On March 11, 2005, Dr. Kevin Blackwell, D.O., examined Knuckles at the request of Disability Determination Services. (R. at 116-20.) Knuckles complained of anxiety and "fluid on my heart." (R. at 116.) Dr. Blackwell reported that Knuckles was in no acute distress. (R. at 118.) She was alert, cooperative and oriented with good mental status. (R. at 118.) Musculoskeletal examination was normal. (R. at 118, 120.) Dr. Blackwell reported that Knuckles had a regular heart rate and rhythm without murmurs, clicks or rubs, and he also found that her lungs were clear. (R. at 118.) Dr. Blackwell reported that the only ongoing cardiac complaint from Knuckles was palpitation, which was under control with medication. (R. 119.) Dr. Blackwell summarized that Knuckles's asthma was under control, that her reported heart problems had resolved, and he found no functional limitations for her other than for her age and sex. (R. at 119.)

On March 12, 2005, B. Wayne Lanthorn, Ph.D., a licensed psychologist, and Jorge F. Fuchs, M.A., a psychological examiner, evaluated Knuckles at the request of Disability Determination Services. (R. at 121-26.) Knuckles stated that she had applied for disability because of anxiety and depression. (R. at 122.) She reported that she had quit school because of problems with anxiety and concentration. (R. at 122.) Knuckles reported that she was trying to earn her GED. (R. at 122.) She admitted to suicidal ideations and reported a suicide attempt at age 17. (R. at 124.) She denied any then-current suicidal ideations. (R. at 124.) Lanthorn reported that Knuckles was oriented to time, place, person and circumstance. (R. at 123.) He also found that she was able to follow directions, and that she had no psychomotor agitation or retardation. (R. at 123.) He reported that Knuckles displayed no evidence of any

psychotic process or any type of delusional thinking. (R. at 123.)

Lanthorn found that Knuckles had some minor limitations in her ability to sustain concentration and persistence and to socially interact due to symptoms of depression and anxiety. (R. at 125.) He found that these symptoms also might impact Knuckles's ability to make some decisions, to maintain schedules and attendance and to sustain a routine. (R. at 125.) Lanthorn also found that Knuckles had no limitations in her ability to perform, understand and remember simple and detailed instructions, to maintain socially appropriate behaviors and to respond appropriately to changes and be aware of normal hazards and take the appropriate precautions. (R. at 125.) Lanthorn diagnosed major depressive disorder, recurrent, mild, and anxiety disorder, not otherwise specified, with symptoms of agoraphobia. (R. at 125.) Lanthorn indicated that Knuckles had a then-current Global Assessment of Functioning, ("GAF"), score of 65.[6] (R. at 125.) He concluded that Knuckles's prognosis was good provided that she remained in counseling. (R. at 126.)

On March 30, 2005, Dr. Richard M. Surrusco, M.D., a state agency physician, found that Knuckles had no exertional limitations. (R. at 127-32.) No postural, manipulative, visual or communicative limitations were noted. (R. at 129-30.) Dr. Surrusco found that Knuckles should avoid concentrated exposure to extreme cold and heat, wetness, humidity, noise, vibration and work hazards. (R. at 130.) He found that

---

[6]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 61-70 indicates "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... , but [that the individual is] generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

Knuckles should avoid all exposure to fumes, odors, dusts, gases and poor ventilation. (R. at 130.) This assessment was affirmed by Dr. Thomas Phillips, M.D., another state agency physician. (R. at 131.)

On March 30, 2005, Eugenie Hamilton, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Knuckles suffered from an affective disorder and an anxiety-related disorder. (R. at 133-46.) Hamilton found that Knuckles had mild restrictions in her activities of daily living and in maintaining social functioning. (R. at 143.) She found that Knuckles had moderate limitations in her ability to maintain concentration, persistence or pace. (R. at 143.) No episodes of decompensation were noted. (R. at 143.) This assessment was affirmed by E. Hugh Tenison, Ph.D., another state agency psychologist, on August 22, 2005. (R. at 133.)

Hamilton also completed a mental assessment on the same date. (R. at 147-50.) Hamilton found that Knuckles was moderately limited in her ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to interact appropriately with the general public and to respond appropriately to changes in the work setting. (R. at 147-48.) She also found that Knuckles was capable of sustaining simple and unskilled competitive work. (R. at 149.)

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2007); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983);

*Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920 (2007). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in the process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2007).

Under the analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2007); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated October 6, 2006, the ALJ denied Knuckles's claim. (R. at 10-17.) The ALJ found that the medical evidence established that Knuckles had a severe impairment, namely asthma, but he found that Knuckles's impairment did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.) The ALJ also found that Knuckles retained the residual functional capacity to perform work at all exertional levels, which did not require her to work around dust and other respiratory irritants or expose her to temperature extremes and which could be performed within the mental limitations

assessed by psychologist B. Wayne Lanthorn. (R. at 16.) Based on Knuckles's age, education, past work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed that Knuckles could perform, including jobs as a truck driver helper, a nonconstruction laborer, a hand packer, an assembler, a production helper and a production inspector. (R. at 16-17.) Therefore, the ALJ found that Knuckles was not under a disability as defined in the Act at any time through the date of his decision, and that she was not eligible for benefits. (R. at 17.) *See* 20 C.F.R. § 416.920(g) (2007).

Knuckles argues that the ALJ erred by failing to develop the record regarding her respiratory and heart impairments. (Plaintiff's Brief In Support Of Her Motion For Summary Judgment, ("Plaintiff's Brief"), at 9.) Knuckles also argues that the ALJ erred by finding that her mental impairments only minimally limited her ability to work. (Plaintiff's Brief at 9-10.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical

-11-

Case 2:06-cv-00069-JPJ-PMS   Document 15   Filed 01/28/08   Page 11 of 16   Pageid#: 65

evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Knuckles argues that the ALJ erred by failing to develop the record with regard to her respiratory and heart impairments. (Plaintiff's Brief at 9.) The ALJ does have a duty to help develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). In *Cook*, the court stated that "...the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook*, 783 F.2d at 1173. The regulations require only that the medical evidence be "complete" enough to make a determination regarding the nature and effect of the claimed disability, the duration of the disability and the claimant's residual functional capacity. *See* 20 C.F.R. § 416.913(e) (2007).

Based on my review of the record, I find that Knuckles's argument on this issue is without merit. The record shows that in July 2004, Knuckles's lungs were clear with no wheezes or crackles. (R. at 104.) In March 2005, Dr. Blackwell reported that Knuckles had a regular heart rate and rhythm without murmurs, clicks or rubs, and her lungs were clear. (R. at 118.) He reported that the only cardiac complaint that Knuckles had was palpitation, which was under control with medication. (R. at 119.) Dr. Blackwell opined that Knuckles's asthma was under control and that her reported

heart problems had resolved. (R. at 119.) In July 2005, Knuckles reported that she had no acute exacerbations of asthma, and she was diagnosed with mild asthma, stable. (R. at 92.) In addition, Knuckles testified that she had not had an asthma attack since taking her medication. (R. at 192.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). The ALJ found that Knuckles's asthma was severe and that she would not be able to work around dust and other respiratory irritants. (R. at 16.) Based on this, I find that substantial evidence exists to support the ALJ's finding on this issue.

Knuckles also argues that the ALJ erred by finding that her mental impairments only minimally limited her ability to work. (Plaintiff's Brief at 9-10.) The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 416.921(a) (2007). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 416.921(b) (2007). The Fourth Circuit held in *Evans v. Heckler*, that, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (emphasis in original).

While Knuckles was diagnosed with major depressive disorder and an anxiety

disorder, the record shows that her symptoms were controlled with medication. (R. at 92, 108-09, 151-53.) As stated above, "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross*, 785 F.2d at 1166. Weitzman indicated that Knuckles was severely limited, but not precluded, in her ability to interact appropriately with supervisors and co-workers and that she had a severely limited, but not precluded, to a no useful ability to interact appropriately with the public and to respond to changes in a routine work setting. (R. at 180-81.) The ALJ rejected this assessment, noting that it was not supported by Weitzman's own treatment notes. (R. at 15.) Weitzman's treatment notes indicate that Knuckles reported that she was doing well since taking medications, and she reported no symptoms of depression. (R. at 92, 108-09, 151.) Weitzman reported in December 2005 and February 2006 that Knuckles's mood was bright. (R. at 151-52.) The ALJ relied upon the assessment of Lanthorn in determining Knuckles's mental residual functional capacity. (R. at 15.) Lanthorn found no evidence of psychotic process or delusional thinking. (R. at 123.) While he diagnosed mild, recurrent major depressive disorder and an anxiety disorder, not otherwise specified, with agoraphobia, he found that Knuckles had only mild limitations in her ability to socially interact. (R. at 125.) Lanthorn assessed Knuckles's then-current GAF score at 65, which indicates some mild symptoms or some difficulty in social, occupational or social functioning. *See* DSM-IV at 32. Based on this, I find that the ALJ properly weighed the evidence in determining Knuckles's mental residual functional capacity.

For all of the reasons stated above, I find that substantial evidence supports the ALJ's finding with regard to Knuckles's residual functional capacity, and I recommend that the court deny Knuckles's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's

decision denying benefits.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the ALJ's finding with regard to Knuckles's residual functional capacity; and

2. Substantial evidence exists to support the ALJ's finding that Knuckles was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Knuckles's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 2006):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified

-15-

proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 28th day of January 2008.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-16-